Appeal of **THE MARKENHEIM CO.**        Docket No. 544.

1. Under section 326, Revenue Act of 1918, tangible property, other than cash, purchased at foreclosure sale and thereafter bona fide paid in to a corporation for stock, must be included in invested capital at its actual cash value at the time paid in; it is immaterial that such value exceeds the price paid at the foreclosure sale.

2. The price paid for property at a foreclosure sale is merely evidence of value, and, in the face of evidence clearly showing a greater actual value, the plain language of the statute will be followed.

3. The words " bona fide," in section 326 (a) (2), are to be construed in the light of the purpose of Congress to close the door to greater exemption, by means of " watered " stock, from excess-profits and war-profits taxes than the actual investment of the stockholders warranted, rather than in the light of the equitable principles applicable to concealed profits by promoters, directors, and prospective stockholders of corporations.

Submitted April 27, 1925; decided May 26, 1925.

*S. F. Carr, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a determination of a deficiency in income and profits tax for the years 1919 and 1920 in the amount of $8,929.21. It does not certainly appear whether the entire deficiency is in issue.

## FINDINGS OF FACT.

The taxpayer is a New York corporation, organized on or about September 20, 1902. On or about September 23rd it received a proposal from Randolph McNutt, John W. Gibbs, Ernest L. Frisbee, and Nelson M. Redfield, reading in full as follows:

To:

### The Markenheim Company.

We hereby submit the following proposition to the Markenheim Company.

We will cause a conveyance to be made by the present owner, the Albany Savings Bank, of the property known as " The Markeen," at the northeast corner of Main and Utica Streets, Buffalo, N. Y., being the same property sold under Foreclosure sale on September 18, 1902, in the action entitled "Albany Savings Bank vs. Emily L. Laird, et al," The Markenheim Company, however to execute to said Albany Savings Bank a bond and purchase money mortgage conditioned for the payment of $115,000.00 as herewith submitted.

We will also cause to be transferred and assigned to the Markenheim Company, .

1. All of the property sold to George H. Minor, attorney, on September 8, 1902, at a chattel mortgage sale under a mortgage executed by Samuel E. Laird and Emily L. Laird to John Mulholland, excepting horse, wagon and harness and articles named in bill of sale of George H. Minor, attorney, to George Simpson.

2. Vendor's rights to property described in a conditional sales contract between Syracuse Crockery Company, vendor, and Samuel E. Laird, vendee, dated October 18, 1901.

3. Vendor's right to property described in a conditional sales contract between D. E. Morgan, Son & Allen Company, vendor, and Samuel E. Laird, vendee.

4. Vendor's rights to property described in a conditional sales contract between Brunswick-Balke-Collendar Company, vendor, and Samuel E. Laird, vendee, dated May 9, 1901.

5. Vendor's rights to property described in conditional sales contract, Meyers to Samuel E. Laird.

We will also pay to the Markenheim Company the sum of $350.00 in money.

And, in full consideration of and for the above mentioned payment, transfers and assignments, we will accept $20,200.00 in preferred stock and $70,200.00 in common stock of the Markenheim Company at its par value; said stock to be issued to the following persons in the amounts stated, to wit:

To:

Randolph McNutt, $12,700.00 preferred and $37,700.00 of common.
John W. Gibbs, $3,333.34 of preferred and $11,666.66 of common.
Ernest L. Frisbee, $2,083.33 of preferred and $10,416.67 of common.
Nelson M. Redfield, $2,083.33 of preferred and $10,416.67 of common.

Said stock to issue upon completion of transfers.

Dated, Buffalo, N. Y., this 23rd day of September, 1902.

|  |  |
|---|---|
| (Signed) | RANDOLPH McNUTT. |
| (Signed) | JOHN W. GIBBS. |
| (Signed) | ERNEST L. FRISBEE. |
| (Signed) | NELSON M. REDFIELD. |

Of the above persons, McNutt and Gibbs were two of the three incorporators and first directors of the taxpayer.

Prior to September 23d, 1902, the property comprised in the foregoing proposal had been purchased by the Albany Savings Bank at a sale under foreclosure of a mortgage held by the said bank, and McNutt, Gibbs, Frisbee, and Redfield had paid $21,354.40 in cash to acquire title from the bank.

The taxpayer paid for the property by executing and delivering to the Albany Savings Bank its bond and mortgage in the sum of

$115,000 and by issuing preferred and common stock at par as follows:

|  | Preferred. | Common. |
|---|---|---|
| Randolph McNutt | $12,700.00 | $37,700.00 |
| John W. Gibbs | 3,333.34 | 11,666.66 |
| Ernest L. Frisbee | 2,083.33 | 10,416.67 |
| Nelson M. Redfield | 2,083.33 | 10,416.67 |
|  | 20,200.00 | 70,200.00 |

The actual cash value of the land, improvements, and personal property, which consists of hotel furniture, fixtures, and equipment, acquired by the taxpayer on the 23d day of September, 1902, as aforesaid, was, at the time of the acquisition thereof, at least the sum of $205,400.

In determining the deficiency here in issue the Commissioner excluded from invested capital that portion of $90,400, capital stock as above set forth, in excess of $21,354.40, and from the deficiency depending upon that action of the Commissioner the taxpayer appeals.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on ten days' notice, in accordance with Rule 50.

### OPINION.

JAMES: There is presented in this appeal the questions of law whether, under section 326 of the Revenue Act of 1918, the taxpayer's invested capital is to be computed on the basis of "actual value of tangible property, other than cash, bona fide paid in for stock or shares," or whether there is to be read into that section a limitation that, regardless of actual value, property which is purchased at a foreclosure sale may not thereafter be paid in to a corporation by the purchasers for stock or shares and such stock or shares included in invested capital at a value in excess of the price then paid.

The Commissioner relies upon article 836 of Regulations 45, which, so far as material, reads as follows:

No claim will be allowed for a paid-in surplus in a case in which the additional value has been developed or ascertained subsequently to the date on which the property was paid in to the corporation, or in respect of property which the stockholders or their agents on or shortly before the date of such payment acquired at a bargain price, as for instance, at a receiver's sale.

In so far as the above regulation expresses a mere rule of evidence as to the value of property so acquired, it is consistent with the decision of this Board in the *Appeal of The Hotel de France Co.*, 1 B. T. A. 28. We see no reason to regard the receiver's sale or any other sale as more than evidence of value, and where, as in this appeal, the preponderance of the evidence is that the actual value was otherwise, the plain language of the statute must be followed and invested capital allowed on the basis of the actual value of the prop-

erty paid in for stock. The Commissioner stipulates that the value of the property was at least $205,400, which in our opinion entirely disposes of the matter.

The Commissioner relies upon the well-known doctrine that directors or promotors may not make a concealed profit in their dealings with the transfer of property to a corporation. It would, perhaps, be sufficient to dispose of this contention by saying that there is no evidence before the Board that there was any concealed profit, but, on the contrary, all of the stock was issued to the purchasers of the property at the foreclosure sale, presumably in proportion to their contributions of cash required for that purpose. Apparently, the Commissioner places some significance upon the words "bona fide" as contained in section 326 (a) (2). It seems to be his position that, under that section, before property can be paid in in good faith, there must have been strict compliance with all equitable rules involving the making of concealed profits, or, indeed, profits at all, by promoters, directors or prospective stockholders in connection with the transfer of property under the conditions existing in this and similar cases.

It seems to us more reasonable to interpret this section of the statute with reference to the effect, in terms of taxation, of the language used. We believe that what Congress was contemplating was the more or less notorious practice of issuing "watered" stock by corporations, the effect of which on invested capital would be, if actual values were not used, to allow a much greater exemption from excess-profits and war-profits taxes than the actual investment of the stockholders of the corporation warranted. This point has been fully discussed in the *Appeal of Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190, and requires no further explanation here.